KENNETH FRUCHT, State Bar No.  178881
FREDERICK J. GEONETTA, State Bar No.  114824
**GEONETTA & FRUCHT, LLP**
825 Washington Street, Suite 220
Oakland, CA  94607
Telephone: (510) 254-3777

Attorneys for Plaintiff CHAZ ADAMS

## UNITED STATES DISTRICT COURT

## FOR THE NOTHERN DISTRICT OF CALIFORNIA

## SAN FRANCISCO DIVISION

| | |
|---|---|
| CHAZ ADAMS,<br><br>         Plaintiff,<br><br>v.<br><br>UNITED AIRLINES, INC., and DOES 1-25, inclusive,<br><br>         Defendants. | CASE NO.:      4:21-CV-3809<br><br>**FIRST AMENDED COMPLAINT**<br><br>1.   **Retaliation for Exercising FEHA Rights**<br>2.   **Failure to Prevent Discrimination**<br>3.   **Retaliation for Taking CFRA Leave (Cal. Gov. Code § 12945.2**<br>4.   **Willful Misclassification in Violation of Labor Code 226.8**<br>5.   **Violation of Labor Code §§ 201, 202, 203**<br>6.   **Violation of Labor Code §§ 226, 1174**<br>7.   **Failure to Provide Lunch Breaks §§ 226.7, 512**<br>8.   **Failure to Pay Overtime**<br>9.   **Wrongful Termination**<br><br>**<u>JURY TRIAL DEMANDED</u>** |

**PLAINTIFF Chaz Adams alleges as follows:**

### <u>NATURE OF THE ACTION</u>

1.         This is an action brought under the Fair Employment and Housing Act ("FEHA"),

**1**

provisions of the California Labor Code, and other statutes and common law.  Plaintiff Chaz Adams (PLAINTIFF") built a career with Defendant United Continental ("UNITED") in pilot crew scheduling.  He was an exemplary performer, a prolific contributor to UNITED's "Runway Ideas" project, and an active collaborator with the United's Flight Operations team working to improve air-to-ground radio efficiency between United pilots and operations across hub Station Operations Centers, all while pursuing and obtaining Bachelors and Masters degrees in Aviation and Aerospace Management. In 2017, as leader of the SOC safety team, PLAINTIFF played an important role in United's successful application for CAL/OSHA's Voluntary Protection Program (VPP) Star Site status, the highest safety designation the state recognizes. For his efforts, his supervisor Steve Boliek ("Boliek") nominated and awarded PLAINTIFF for United's "Best of the Bay" (departmental Employee of the Quarter."

2.      Unfortunately, PLAINTIFF's efforts to work with the system and to speak out when he encountered what he perceived to be violations of UNITED's policies, ran into immovable headwinds after he stood up for a fellow employee who was subjected to a national origin based slight.  Shortly after coming to his colleague's defense, he was subjected to intimidation, punishment, harassment, and ongoing retaliation.  PLAINTIFF was ultimately caught up in a baseless "investigation" and suspension, leading to a wrongful termination. This lawsuit was necessary to vindicate his rights.

## PARTIES

3.      PLAINTIFF Chaz Adams ("PLAINTIFF" or "ADAMS") is, and at all times relevant herein was a resident of San Francisco, California and was employed as an Operations Supervisor working for Defendant United Airlines (UNITED).

4.      Defendant UNITED is an Illinois corporation.

5.      In addition to the Defendants named above, PLAINTIFF sues fictitiously Defendants DOES 1 through 25, inclusive, pursuant to Code of Civil Procedure §474, because their names, capacities, and status are not presently known. PLAINTIFF is informed and believes, and thereupon alleges, that each of the fictitiously named Defendants is responsible

**COMPLAINT FOR DAMAGES**
Adams v. United Airlines, et al., Norther District Court Case No. 21-3809

in some manner for the occurrences herein alleged, and such Defendants caused PLAINTIFF's damages as herein alleged. PLAINTIFF will amend this complaint to show their true names and capacities, together with appropriate charging language, when such information has been ascertained.

6.      PLAINTIFF is informed and believes, and thereupon alleges, that each of the Defendants was at all times relevant here the agent, servant, employee, and/or representative of the other Defendant and was acting, at least in part, within the course and scope of such relationship and that each and every Defendant herein is jointly and severally responsible and liable to PLAINTIFF for the damages hereinafter alleged.

**JURISDICTION AND VENUE**

7.      PLAINTIFF brings this action pursuant to and under the provisions of the Fair Employment and Housing Act, California Government Code §§ 12945.2, et seq. (hereinafter referred to as CFRA); California Constitution, Article I, §1; and other common and statutory laws, as well as various provisions of the California Labor Code.

8.      PLAINTIFF was a full-time employee with UNITED and worked at least 1,250 hours in the 12-month period before taking his leave of absence, and worked at a location in which Defendant UNITED employed at least 50 employees within a 75-mile radius of PLAINTIFF's work site.

9.      Venue is proper in this Court because the principal offices of Defendant UNITED is located in this county, and all the relevant acts of the parties occurred in this county.  Venue is also proper in the City and County of San Francisco because the alleged acts in violation of Cal. Gov. Code §§ §§ 12945.2 and 12940 *et seq.* occurred at the San Francisco Airport.

**EXHAUSTION OF ADMINISTRATIVE REMEDIES**

10.      PLAINTIFF filed a charge of discrimination with the DFEH against Defendant UNITED or  about November 24, 2020, and the DFEH thereafter issued a Right-To-Sue letter on the same day.

**COMPLAINT FOR DAMAGES**
Adams v. United Airlines, et al., Norther District Court Case No. 21-3809

**FACTUAL ALLEGATIONS**

**A.     THE SAYED COMPLAINT AND SUBSEQUENT RETALIATION**

11.     PLAINTIFF was hired and started working at UNITED on or about April 1, 2009 as a Crew Scheduler at UNITED's premerger corporate headquarters in Houston, Texas.

12.     On or about May 1, 2013, PLAINTIFF was promoted and transferred to San Francisco International Airport ("SFO") and became an Operations Supervisor.

13.     Defendant UNITED used Plaintiff's title of "Operations Supervisor" to intentionally misclassify PLAINTIFF as an employee who was exempt from California wage and hour laws, including but not limited to meal and rest break and overtime laws.

14.     PLAINTIFF does not meet all the criterion to be exempt either under the "administrative exemption" or the "executive exemption" tests.   As an Operations Supervisor PLAINTIFF did not have any direct reports nor did he have the authority to make hiring and firing decisions, both of which are elements of the executive exemption.  Nor did his primary duties entail performing work directly related to the management or general business operations of UNITED, which are necessary components of the administrative exemption. PLAINTIFF'S work was related to "operational logistics" and not general business operations.

15.     Prior to January 2018, PLAINTIFF was an exemplary employee.  Not only was PLAINTIFF a private pilot, but while working at UNITED he pursued and obtained a Bachelors and Masters Degree in Aviation and Aerospace Management.  In or about December 2017, when he was considering applying for other positions within UNITED, his supervisor Steve Boliek ("Boliek") wrote a letter of recommendation praising PLAINTIFF's work performance and ethic, and noted that he "has made great strides towards building relationships around the hub with his honesty and integrity held to a higher regard than most would of themselves."

16.     The high regard in which PLAINTIFF's work and character were held within UNITED underwent a seismic shift after January 2018 following an incident in which PLAINTIFF tried to uphold the ethics and policies that he understood to be part of the job of a member of

UNITED's management team.

17.     In or about January 2018, PLAINTIFF saw a note posted on the managers' bulletin board in the Station Operations Center which read, "Don't Sayed me." PLAINTIFF understood this to be a slight directed at one of PLAINTIFF's former SOC colleagues, Sayed Lutfi ("Lutfi"), a reserve military serviceman of Middle Eastern descent who at the time was working for UNITED at the San Jose International Airport.

18.     PLAINTIFF believed that Lutfi was not well liked by management, and out of concern for Lutfi's reputation and knowing that Lutfi was a member of a protected class, PLAINTIFF sent Lutfi a picture of the note. Upon receipt of the note, LUTFI decided to bring the issue to HR (the "Sayed Complaint").  Soon thereafter the notes disappeared and PLAINTIFF was subjected to retaliation for assisting Lutfi in bringing a claim of harassment to UNITED.

19.     PLAINTIFF is informed and believes and thereupon alleges that on or around February 9, 2018, the SFO SOC management team held a meeting to discuss the Sayed Complaint, and that instead of investigating who had posted the offending note, the meeting focused on discovering who would have reported and sent the note to Lutfi.  PLAINTIFF believes that he was immediately suspected of having initiated the complaint because he was known to be friends with Lutfi at work.

20.      On the evening of February 9, 2018, PLAINTIFF received a text message to his personal cell phone from a number identified as being from Hartford, CT (860 869-2907). The message simply said "SNITCH" in all caps.

21.     PLAINTIFF is informed and believes and thereupon alleges that there were only two SFO SOC managers with ties to Hartford, CT - Leroy Johnson ("Johnson") and Mashario Brown ("Brown").  Johnson and Brown both had access to PLAINTIFF's cell-phone number through the UNITED employee schedule. Both were friends, and both were involved in the management investigation into the Sayed Complaint.  Brown's name was also on one of the other notes posted on the SOC bulletin board and was in the photo PLAINTIFF sent to Sayed.

22.     When PLAINTIFF received the text message he felt threatened, but was unsure

of what to do. He told several of his coworkers that evening about the threat, and believes he told Lutfi as well. PLAINTIFF didn't go to management because he felt that he was in a lose-lose situation and was not emotionally prepared for a 4-versus-1 debate. He decided to wait it out and keep doing his best.

23.     In July 2018 PLAINTIFF met with the new managing director, David Page, and told him that he felt he couldn't trust any of the level 4 managers.  Thereafter, PLAINTIFF was subjected to repeated and continuing retaliation for his complaints up to and including his termination.

24.     The retaliation against PLAINTIFF included the following:

25.     During PLAINTIFF's 2018 mid-year review, his direct manager Melvin Merino gave him all positive feedback for his work to the date of the review. However, Merino indicated that he had been instructed to include notes from the level 4 group which unfairly characterized some of the work proposals PLAINTIFF had made for operational improvements as "self-benefitting."  PLAINTIFF was thereafter denoted as "borderline" relative to his peers. PLAINTIFF complained that this was contrary to the company's Safe-to-Say-It policy which encouraged employees to make proposals to improve the company, and that it was effectively setting him up for punishment or a bad review at the end of the year. Beyond those specific issues, the level 4 management group continued to make veiled threats in the form of off-handed comments.  Among other things, Johnson, for example, frequently reminded PLAINTIFF that he was an "at-will employee."

26.     In October 2018, gate manager Toby Ching singled PLAINTIFF out by posting incorrect accounting information on the office schedule about PLAINTIFF's 2018 Kin Care use, accusing PLAINTIFF of exceeding his Kin Care limits. Ching's posting exposed the false information to all of PLAINTIFF's peers and managers.  PLAINTIFF asked Ching to correct the record but he never did so, leaving PLAINTIFF's peers and managers with the false impression that PLAINTIFF was violating UNITED's Kin Care policy.

27.     Johnson also singled PLAINTIFF out in late 2018 to attend, under threat of

insubordination if he refused, a training far away from his duty station during a period when Johnson knew that PLAINTIFF needed to be close to his mother who needed his care for a medical condition. PLAINTIFF is informed and believes and thereupon alleges that no other employees were mandated to attend the training, but were rather offered it as a "voluntary growth opportunity."

28.     PLAINTIFF is informed and believes and thereupon alleges that the retaliatory acts alleged above were directed by his level 4 managers and were in response to his complaints to management  about the Sayed Complaint, and his level 4 manager's belief that PLAINTIFF is the person who "leaked" the Sayed Complaint to Lutfi.  These acts of retaliation were part of a continuing violation that acted to toll the statute of limitations.

29.     On or about November 8, 2018, Operations Manager Ricky Santala threatened to fire PLAINTIFF for offering to write an email to his vendor manager, as was common practice.

30.     In or around November 2018 PLAINTIFF applied for a promotion to a Gate Manager position in the SFO SOC.  Michael Pacheco, Leroy Johnson, and Boliek, all of whom were part of the Sayed Complaint investigation, were on the interview panel for the position. Plaintiff, who was well qualified for the position, was rejected, and the position instead was given to a less qualified candidate.

31.     On or about December 12, 2018, PLAINTIFF filed a complaint with United Airlines' Internal Ethics and Compliance website, and on January 9, 2019 he complained to Chris Marashlian ("Marashlian"), manager of SFO Human Resources.  PLAINTIFF complained about the hostile work environment, harassment, and increased scrutiny that he was being subjected to, and he continued to complain up until the time of his termination.  However, instead of investigating his complaint and taking corrective action to protect PLAINTIFF from retaliation and harassment, UNITED ignored his complaint and allowed the harassment and retaliation to continue unabated.

32.     On January 15, 2019 PLAINTIFF was unable to take a lunch break. He submitted

**COMPLAINT FOR DAMAGES**
Adams v. United Airlines, et al., Norther District Court Case No. 21-3809

a claim for no-lunch pay of 1-hour straight time and followed up with an email to management on or about January 17, 2019.   On or about January 28, 2019, Johnson denied PLAINTIFF's claim, explaining in an email that "Due to the flexibility afforded to management employees, no-lunch pay is not authorized."

33.     In or about January 2019, PLAINTIFF applied for a position as a Level 5 Ramp Tower Manager.  He was subsequently invited for an interview.  The invitation listed Kevin Coon, Leroy Johnson, and Steven Boliek ("Boliek") as being on the interview panel. PLAINTIFF voiced concerns to Marashlian about Johnson and Boliek being on the interview panel, because he was worried they wouldn't give him a fair chance.

34.     At the end of his shift in February 2019, Plaintiff left work early because of recurring headaches.  Before leaving he first obtained permission from managers Boliek and Santala.

35.     In or around March 2019, Johnson approached PLAINTIFF and asked if he had received any feedback about the Ramp Tower Manager job that PLAINTIFF had interviewed for with Johnson and Kevin Coon.  PLAINTIFF told him that he had only heard from recruiting about a lower-level opportunity.  Johnson told PLAINTIFF that Coon was concerned that PLAINTIFF would "go over his head," implying that he had done that with the Sayed Complaint and his complaints to Marashlian at HR. PLAINTIFF felt intimidated, and believed he was intentionally being intimidated.  He is informed and believes and thereupon alleges that the person that was promoted to the tower position he applied for, had missed the original application deadline, and that Boliek had reopened the posting for him.

36.     On March 29, 2019 PLAINTIFF returned to work from a sick leave. Because of his sick leave absence, Santala implied that PLAINTIFF had a reliability problem.  PLAINTIFF responded that he was legally entitled to sick leave.  Moments later, Santala approached PLAINTIFF a second time to discuss reliability.  PLAINTIFF noted that he had arrived before his shift start time while Santala had arrived to the office after his shift starte time.  Santala responded that "We are not having this fucking conversation!"  PLAINTIFF subsequently

emailed Santala, explaining the California law and the right to sick leave, and indicated that he felt there was a hostile work environment.

37.    On or about April 7, 2019, Plaintiff sent an email to his director David Page ("Page") entitled "SOC Leadership March-April 2019." PLAINTIFF outlined his concerns about Santala yelling at him and violating the tenets of dignity and respect. He also shared concerns about his legally protected absences. He closed the email by stating, "Looking forward to mid-year reviews, I am seriously worried about being given a fair shot."

38.    In or around April 2019, PLAINTIFF applied for a level 4 SFO SOC Operations Manager position. UNITED was hiring two people. PLAINTIFF was not even called for an interview.

39.    On or about May 6, 2019, PLAINTIFF approached the schedule team and Page about changing his vacation days for that month. Johnson denied PLAINTIFF's request, intending to later approve a request made for the same day by another employee. In the ensuing days, a meeting was called between Page, Johnson, and PLAINTIFF.  When PLAINTIFF asked why Johnson was not forthcoming with information about granting the other employee's vacation request he said the information "didn't concern you," and gave PLAINTIFF inconsistent explanations about UNITED's vacation request policies and practices in order to justify denying PLAINTIFF's vacation request.

40.    On or about May 7, 2019, after completing a 17-hour shift, PLAINTIFF was asked to cover the ramp tower radio – a task requiring special skill. The overnight gate manager had called in sick, another manager had left the office for company business, and Johnson had left the airport property around midnight to get dinner at McDonald's, leaving the management team understaffed. PLAINTIFF volunteered to support the sole manager, who was left alone to do the work of four. PLAINTIFF went above and beyond in covering the operation, but this event was later twisted into a negative and used to castigate and counsel PLAINTIFF because during the shift he had placed a call on hold while working the ramp tower radio.

41.    On or about May 22, 2019, Johnson said to PLAINTIFF, in front of his coworkers,

to "Put some bass in your voice," "You just want to get people in trouble. Go sit down."

42.     On or about May 23, 2019, Johnson again told PLAINTIFF "Put some bass in your voice," "Why you always trying to get people in trouble?"

43.     On or about May 27, 2019, PLAINTIFF wrote to Page and Marashlian that he was "losing sleep over the hostile work environment."

44.     On or about May 28, 2019, PLAINTIFF emailed HR's Marashlian, telling him that the hostile work environment was continuing and that it was affecting his health and peace of mind.

45.     On or about May 31, 2019, PLAINTIFF emailed Page, writing "Please Help — Violations of WTG."  WTG was a reference to UNITED's "Working Together Guidelines."

46.     On or about May 31, 2019, PLAINTIFF again emailed Marashlian "Requesting Your Help — Hostile Work Environment."

47.     PLAINTIFF's emails and communications to HR were ignored and unaddressed. PLAINTIFF is informed and believes and thereupon alleges that HR conducted no investigation into his complaints, and instead allowed the retaliation and harassment to continued up to, including, and beyond his suspension in September 2019.

48.     On or about July 10, 2019, PLAINTIFF took a working lunch/break while working international gates. He let his peer know that he was leaving, and was gone for a total of 60 minutes. PLAINTIFF was working on an initiative about "medevac flight priority."  When he returned, his supervisor Nakul Narayan ("Narayan") advised him that he needed to ask permission before leaving the office. Narayan also stated that he would need to check with Page because of PLAINTIFF's "history of write-ups."

49.     On or about July 10, 2019, PLAINTIFF emailed Boliek and told him about the medevac discussion he had during his lunch/break.

50.     On or about July 11, 2019, PLAINTIFF was working international zone on a double shift. He badly needed a break to take care of biological needs and get some food. He called Nakul for permission, pursuant to Narayan's July 10th directive. Narayan told him, "I

**COMPLAINT FOR DAMAGES**
Adams v. United Airlines, et al., Norther District Court Case No. 21-3809

prefer if you don't get up right now but I can go for you." In response, PLAINTIFF sent a formal request for a bio-break via email. Nakul replied giving him "permission." He returned to the desk eight minutes later. PLAINTIFF is informed and believes and thereupon alleges that others in the office are not required to ask permission before taking breaks.

51.    On or about July 30, 2019, PLAINTIFF was called into Boliek's office and given his mid-year review with a "below peers" rating and given a Performance Improvement Plan ("PIP"). The negative performance review and the PIP were premised on a misrepresentation and falsification of PLAINTIFF's work performance.  Marashlian was also present. PLAINTIFF told them that both the negative review and PIP were retaliation for his having participated in the Don't Sayed Me complaint. He told them that he intended to file complaints with the State Labor Board and the EEOC and that he would be seeking legal counsel.  He also told them again that he was losing sleep because of the hostile work environment.

52.    In or about August 11, 2019, PLAINTIFF filed a complaint with the California Labor Commission, Department of Industrial Relations.  In the complaint PLAINTIFF outlined his complaints to management, and about not getting meal and rest breaks and UNITED's retaliatory response to his complaints.

53.    This was not the first time PLAINTIFF had complained about retaliation and harassment with respect to meal and rest breaks.  He had complained as early as December 2013, but UNITED at that time also took no action.

54.    On or about August 13, 2019, PLAINTIFF submitted a complaint of retaliation to the EEOC alleging retaliation because of the Sayed Complaint.

55.    On or about August 12, 2019, PLAINTIFF advised his leadership team that he had filed a complaint with the Labor Board, and on or about August 14, 2019 he advised the leadership team that he had filed a claim with the EEOC.  PLAINTIFF told them that he was "being retaliated against for demanding breaks, lunches, and [his] right to kin care and personal sick time."

56.    On or about August 14, 2019, PLAINTIFF wrote to his management team of

Boliek and Marashlian, with a copy to Page, referencing a retaliation inquiry that had been opened at the EEOC regarding his July 30, 2019 performance review, stating "…I was given a negative performance review which contained biased language and clearly false statements…it was clear to me at the meeting that I was being retaliated against for having participated in a complaint on the basis of someone's protected class/status in 2018."

57.     On or about August 19, 2019, PLAINTIFF opened FMLA Case No. 761849.

58.     On or about August 20, 2019, during a meeting with Boliek, PLAINTIFF reminded him of the labor complaint that he filed and stated that he was stressed, having nightmares, and couldn't sleep through the night.

59.     On or about September 4, 2019, PLAINTIFF requested a copy of his personnel file.

60.     In the beginning of September 2019, PLAINTIFF repeatedly complained to Boliek and Marashlian in person during PIP meetings and in email communications, that he was having nightmares and trouble sleeping.  This was negatively impacting his work and was a result of the stress of being bullied, harassed, intimidated, retaliated against, and singled out.

61.     On or about September 7, 2019, PLAINTIFF posed the question: Am I required to use my personal phone for work-related communications?  In his inquiry he referenced Labor Code § 2802 and *Marley Castro et al. v. ABM Industries*.

62.     On or about September 12, 2019, PLAINTIFF received a letter from UNITED stating that he was eligible for FML and asking him to return the FML completed form. That day PLAINTIFF opened FMLA Case No. 764597 using UNITED's HR website.

63.     On or about September 17, 2019, PLAINTIFF spoke on the phone with a UNITED manager whom he had known since 2010. They discussed an application that PLAINTIFF had submitted for a job opening at LAX several weeks earlier.  The manager told PLAINTIFF that a group of hiring managers had met to review resumes and select applicants to be interviewed. The manager told PLAINTIFF that his resume had scored among the highest of all the applicants, but when his name was mentioned, several managers said no to his selection for an

interview.  PLAINTIFF told the manager that he feared he had been blacklisted by UNITED

management in SFO.

64.   On or about September 18, 2018, PLAINTIFF was out on Kincare and tried to

meet with his doctor, Dr. Charles Barr, in Pasadena.

65.   On or about September 19, 2019, PLAINTIFF took a sick day and met with doctor

Barr in Pasadena, and left completed and signed FMLA documents with him.

66.   On or about September 24, 2019, Boliek asked PLAINTIFF where he had been

and what he had been doing on September 18 and 19.  Plaintiff informed him of the FMLA case

number that had been generated, and that he had left the FMLA paperwork with his doctor.

Boliek stated that he was alarmed by PLAINTIFF's "apparent pattern of abuse of sick time."

Boliek tried to intimidate PLAINTIFF and get him to disclose private medical information, but

PLAINTIFF was uncomfortable sharing private details beyond the fact that he was suffering

from nightmares and sleep issues.  Boliek responded that "that's not FMLA."  When PLAINTIFF

asserted his right to keep his medical information private, Boliek took PLAINTIFF's badge and

suspended him with pay, pending his investigation.

67.   PLAINTIFF is informed and believes and thereupon alleges that was suspended

for asserting his right to not disclose private medical information when requesting an FMLA

leave of absence, and in retaliation for his involvement in assisting Lutfi, and for his many

complaints about harassment and the hostile work environment that prevailed at UNITED, and

for asserting his wage and hour rights.

68.   On or about September 24, 2019, PLAINTIFF was suspended with pay from

September 24-26, 2019.

69.   PLAINTIFF was out on FMLA from September 27, 2019 for approximately ten

weeks.

70.   On or about September 30, 2019 PLAINTIFF filed a complaint with the U.S.

Department of Labor for violations of the FMLA.  In his complaint he outlined his unsuccessful

attempts to deal with the harassment and hostile work environment internally through

UNITED's HR website, and the ongoing retaliation that he was suffering in the workplace.

71.     On or about October 7, 2019, PLAINTIFF wrote to his management that his FMLA had been extended through October 31, 2019.  On or about November 1, 2019, he again wrote to the team that his doctor had extended his leave through November 7, 2019.  It was subsequently extended again through December 16, 2019.

72.     On or about October 17, 2019, PLAINTIFF filed a complaint of retaliation with the EEOC.

73.     In or about October 2019, PLAINTIFF reviewed his wage and attendance records and discovered that it did not reflect his paid suspension, and that he had instead been charged with three days (24 hours) of sick time, and his absence shown as FMLA.  PLAINTIFF emailed Boliek on or about October 2, 2019, asking that his record be corrected.  He again reviewed his wage and attendance records in January 2020, and saw that his record had still not been corrected and his sick time had still not been returned to his sick bank.  On or about January 22, 2020, PLAINTIFF again emailed Boliek and asked that his record be corrected. PLAINTIFF is informed and believes and thereupon alleges that his record was never corrected.

74.     On or about February 17, 2020, PLAINTIFF had a telephone conversation with Boliek.  Unbeknownst to PLAINTIFF, without his permission or knowledge, and in violation of his privacy rights and California Penal Code § 632, the call was put on speaker phone while Marashlian listened in on the conversation.

75.     On or about March 17, 2020, PLAINTIFF received his compensation statement which denied him a pay raise for 2020 based on his 2019 performance review of "Does not meet [standards]."

76.     On or about March 26, 2020, PLAINTIFF was terminated for "misconduct" purportedly premised on his medical leaves of absence.

77.     As a direct and proximate cause of the wrongful termination, the hostile work environment, the harassment and the numerous violations of FEHA and the Labor Code, and the mistreatment by Defendants, PLAINTIFF suffered emotional distress and economic

damages in an amount to be determined at trial.

**FIRST CLAIM FOR RELIEF**

**(RETALIATION FOR EXERCISE OF RIGHTS UNDER FAIR EMPLOYMENT**
**AND HOUSING ACT, CAL. GOV. CODE SECTION 12940 *ET SEQ.*)**
(Against Defendant UNITED and Does 1-25)

78.     PLAINTIFF incorporates by reference the allegations set forth above as though fully restated herein.

79.     California Government Code Section 12940(h) makes it unlawful for an employer to discharge, expel, or otherwise discriminate against any person because the person has opposed an unlawful practice or because the peron has filed a complaint opposing such a practice.

80.     Defendant retaliated against PLAINTIFF for opposing harassment and discrimination against Lutfi and assisting Lutfi in such opposing such unlawful practices.

81.     As a direct and proximate result of the unlawful conduct of Defendant, PLAINTIFF has suffered damages including but not limited to past and future loss of income, benefits, and other damages to be proven at time of trial.

82.     As a direct and proximate result of Defendant's actions against PLAINTIFF, as alleged above, PLAINTIFF has suffered and will continue to suffer mental and emotional distress, including but not limited to frustration, humiliation, embarrassment, stress, depression, nervousness, anxiety and loss of self-worth, and damage to his reputation.

83.     Defendant committed the acts herein alleged maliciously, fraudulently, and oppressively with the wrongful intention of injuring PLAINTIFF, and acted with an improper and evil motive amounting to malice and/or oppression, and in conscious disregard for PLAINTIFF's rights, and such acts were committed by, authorized by, and/or ratified by officers, directors, and/or managing agents of Defendant.  PLAINTIFF is therefore entitled to recover and herein prays for punitive damages in an amount sufficient to punish and deter Defendant and others for such conduct.

84.     PLAINTIFF has incurred, and will continue to incur, attorneys' fees and costs in the prosecution of this action, and PLAINTIFF therefore seeks attorneys' fees and costs under all applicable provisions of law.

WHEREFORE, PLAINTIFF prays for judgment as set forth below.

### SECOND CLAIM FOR RELIEF
**(FAILURE TO PREVENT DISCRIMINATION, HARASSMENT AND RETALIATION IN VIOLATION OF CAL. GOV. CODE SECTION 12940 ET SEQ.)**
(Against Defendant UNITED and Does 1-25)

85.     PLAINTIFF incorporates by reference the allegations set forth above as though fully restated herein.

86.     At all times material to this complaint, PLAINTIFF was an employee, and Defendant UNITED was and Employer within the meaning of FEHA.

87.     It is an unlawful employment practice under the FEHA, Government Code § 12940(k), for an employer to fail to take all reasonable steps necessary to prevent discrimination and harassment from occurring by, among other things, failing to monitor its employees to ensure that PLAINTIFF was not subjected to retaliation for having exercised his rights under FEHA.

88.     Defendant failed to prevent, and in fact allowed continued discriminatory conduct and retaliation against PLAINTIFF after he brought the Sayed Complaint to light.

89.     On information and belief, the Defendant failed to maintain and enforce adequate policies and procedures, failed to provide adequate training of personnel, and failed to take other reasonable steps necessary to prevent the violations of the FEHA alleged herein from occurring.

90.     The above-described actions and omissions of the Defendants constitute failure to prevent discrimination and retaliation under FEHA.

91.     As a direct and proximate result of the unlawful conduct of Defendant, PLAINTIFF has suffered damages including but not limited to past and future loss of income, benefits, and

other damages to be proven at time of trial.

92.    As a direct and proximate result of Defendants' actions against PLAINTIFF as alleged above, PLAINTIFF has suffered and will continue to suffer mental and emotional distress, including but not limited to frustration, depression, nervousness, anxiety and loss of self-worth, and damage to his reputation.

93.    The unlawful conduct alleged above was engaged in by the officers, directors, supervisors and/or managing agents of Defendant, who were acting at all times relevant to this Complaint within the scope and course of their employment.  Defendant UNITED is therefore liable for the conduct of said agents and employees under the doctrine of strict liability.

94.    Defendant committed the acts herein alleged maliciously, fraudulently, and oppressively with the wrongful intention of injuring PLAINTIFF, and acted with an improper and evil motive amounting to malice and/or oppression, and in conscious disregard for PLAINTIFF's rights, and such acts were committed by, authorized by, and/or ratified by officers, directors, and/or managing agents of Defendant.  PLAINTIFF is therefore entitled to recover and herein prays for punitive damages in an amount sufficient to punish and deter Defendant and others for such conduct.

95.    PLAINTIFF has incurred, and will continue to incur, attorneys' fees and costs in the prosecution of this action, and PLAINTIFF therefore seeks attorneys' fees and costs under all applicable provisions of law.

96.    The conduct previously alleged violates California Government Code Section

WHEREFORE, PLAINTIFF prays for judgment as set forth below.

### THIRD CLAIM FOR RELIEF

**(RETALIATION FOR EXERCISE OF RIGHTS UNDER CALIFORNIA FAMILY RIGHTS ACT,
CALIFORNIA GOVERNMENT CODE SECTION 12945.2)**
(Against Defendant UNITED and Does 1-25)

97.    PLAINTIFF incorporates by reference the allegations set forth above as though fully restated herein.

98.     California Government Code Section 12945.2(l) makes it unlawful for an employer to discharge, fine, suspend or discriminate against an employee for exercising the right to family medical leave.

99.     Defendant retaliated against PLAINTIFF for taking CFRA leave by suspending and then terminating him and by failing to accurately record his FMLA and sick leave absences as retaliation for his complaints about sick leave and FMLA.

100.     As a direct and proximate result of the unlawful conduct of Defendant, PLAINTIFF has suffered damages including but not limited to past and future loss of income, benefits, and other damages to be proven at time of trial.

101.     As a direct and proximate result of Defendant's actions against PLAINTIFF, as alleged above, PLAINTIFF has suffered and will continue to suffer mental and emotional distress, including but not limited to frustration, humiliation, embarrassment, stress, depression, nervousness, anxiety and loss of self-worth, and damage to his reputation.

102.     Defendant committed the acts herein alleged maliciously, fraudulently, and oppressively with the wrongful intention of injuring PLAINTIFF, and acted with an improper and evil motive amounting to malice and/or oppression, and in conscious disregard for PLAINTIFF's rights, and such acts were committed by, authorized by, and/or ratified by officers, directors, and/or managing agents of Defendant.  PLAINTIFF is therefore entitled to recover and herein prays for punitive damages in an amount sufficient to punish and deter Defendant and others for such conduct.

103.     PLAINTIFF has incurred, and will continue to incur, attorneys' fees and costs in the prosecution of this action, and PLAINTIFF therefore seeks attorneys' fees and costs under all applicable provisions of law.

WHEREFORE, PLAINTIFF prays for judgment as set forth below.

**FOURTH CLAIM FOR RELIEF**
**(WILLFUL MISCLASSIFICATON – CAL. LABOR CODE 226.8)**
(Against Defendant UNITED and Does 1-25)

COMPLAINT FOR DAMAGES
Adams v. United Airlines, et al., Norther District Court Case No. 21-3809

104.    PLAINTIFF re-alleges and incorporates herein by reference the above paragraphs as though fully set forth herein.

105.    California law makes it unlawful for an employer to knowingly and voluntarily misclassify employees as exempt from wage and hour laws.  Defendant UNITED knowingly and involuntarily misclassified PLAINTIFF in order to make her ineligible to receive overtime and other protections of California wage and hour laws.  Defendant was required to pay wages for each hour worked, and overtime wages when non-exempt employees work over eight (8) hours n a day or forty (40) hours in a week by calculating the hourly rate and then computing the overtime premium amount owed.  PLAINTIFF was also entitled to receive meal and rest time breaks. PLAINTIFF worked for Defendants without being paid for all hours worked, regular and overtime, and without receiving meal and rest breaks.

106.    As a result of Defendant's violation of statutory mandates to correctly classify employees as more fully set forth above, PLAINTIFF was damaged in an amount to be determined at trial, but which exceeds the minimum jurisdictional thresholds of this Court.

107.    PLAINTIFF seeks as damage all wages owed by Defendant.  PLAINTIFF further seeks an award of prejudgment interest on the unpaid wages herein.

WHEREFORE, PLAINTIFF prays for judgment as set forth below.

### FIRTHCLAIM FOR RELIEF
**(Violation of California Labor Code §§ 201, 202, 203, Waiting Time Penalties)**
(Against Defendant UNITED and Does 1-25)

108.    PLAINTIFF re-alleges and incorporates herein by reference the above paragraphs as though fully set forth herein.

109.    PLAINTIFF was employed by UNITED, and as detailed herein was not paid all wages due.  PLAINTIFF was terminated on or about March 26, 2020.  Since that time Defendants have willfully continued to fail to pay PLAINTIFF for all wages owed him, and consequently, owe PLAINTIFF thirty days of pay in an amount to be proven at trial.

110.    PLAINTIFF is informed and believes that Defendant's failure to pay all wages upon

separation was willful.  As a consequence of Defendants' willful failure to pay all wages upon

separation, Defendants are subject to civil and statutory penalties for its conduct directed at

PLAINTIFF.

WHEREFORE, PLAINTIFF prays for judgment as set forth below.

**SIXTH CLAIM FOR RELIEF**
**(VIOLATION OF CALIFORNIA LABOR CODE §§ 226, 1174**
**FAILURE TO PROVIDE ACCURATE ITEMIZED WAGE STATEMENTS**
**AND MAINTAIN ADEQUATE RECORDS)**
(Against Defendant UNITED and Does 1-25)

111.   PLAINTIFF re-alleges and incorporates herein by reference the above

paragraphs as though fully set forth herein.

112.   Pursuant to Labor Code §§ 226 and 1174, and the recordkeeping provisions of

Wage Order 9-2004, UNITED is required to maintain an accurate record of each employee's

hours of works each workday for a period of at least three (3) years, and provide each

employee with accurate, period wage payments in writing setting forth, amount other things:

(a) the dates of labor for which payment of wages is made; (b) the total hours worked for a pay

period; (c) the applicable rates of pay for all hours worked; (d) gross and net wages paid, as

well as authorized deductions from those wages; and (e) the name and address of the employer.

113.   Defendants have knowingly failed to comply with California Labor Code §§

226 and 1174 by, among other things, failing to provide accurate itemized wage statement in

writing showing all applicable rates in effect during the pay period and the corresponding

number of hours worked at each hourly rate by PLAINTIFF; (b) failing to show the dates of

labor for which payments are or were being made; (c) failing to provide complete and/or

accurate information concerning deductions that are or have been taking from PLAINTIFF's

wages.

114.   As a result of Defendant's failure to comply with California Labor Code §

226(a), and pursuant to California Labor Code § 226(e), PLAINTIFF is entitled to recover the

greater of all actual damages or fifty dollars ($50) for the initial period in which a violation

occurred, and on hundred dollars ($100) for each violation in each subsequent pay period, not exceeding an aggregate penalty of four thousand dollars ($4,000).

115.    PLAINTIFF is further entitled to an award of costs and reasonable attorneys fees pursuant to California Labor Code §§ 226(e) and (g).

116.    WHEREFORE, PLAINTIFF prays for judgment as set forth below.

**SEVENTH CLAIM FOR RELIEF**
**(FAILURE TO PROVIDE MEAL AND REST PERIODS IN VIOLATION OF LABOR CODE §§ 226.7, 512)**
(Against Defendant UNITED and Does 1-25)

117.    PLAINTIFF re-alleges and incorporates herein by reference the above paragraphs as though fully set forth herein.

118.    Defendant was required to provide meal and rest periods in accordance with Cal. Labor. Code § 226.7 and other applicable wage orders.

119.    Defendant regularly failed to provide PLAINTIFF with a 30-minute meal break before the end of his fifth hour of work.

120.    As a direct and proximate result of Defendant's failure to provide PLAINTIFF with either meal and rest periods or wages in lieu thereof, PLAINTIFF has been damaged in an amount to be proven at trial, but which exceed the minimum jurisdictional thresholds of this Court. PLAINTIFF further seeks an award of prejudgment interest on the unpaid wages herein.

121.    Defendant failed to do so, and as a consequence, PLAINTIFF is entitled to recover an amount to be proven at trial, but not less than one additional hour of pay at the regular rate of compensation for each workday that the meal and/or rest period was not provided, as articulated in Cal. Labor Code § 226.7(b).

122.    PLAINTIFF has incurred, and will continue to incur, attorneys' fees and costs in the prosecution of this action, and PLAINTIFF therefore seeks attorneys' fees and costs under all applicable provisions of law.

WHEREFORE, PLAINTIFF prays for judgment as set forth below.

**EIGHTH CLAIM FOR RELIEF**

**(FAILURE TO PAY ALL WAGES AND OVERTIME IN VIOLATION OF LAB. CODE § 510)**

(Against Defendant UNITED and Does 1-25)

123.    PLAINTIFF re-alleges and incorporates herein by reference the above paragraphs as though fully set forth herein.

124.    Under California law, Defendant was required to pay wages for each hour worked, and overtime wages when non-exempt employees work over eight (8) hours in a day or forty (40) hours in a week by calculating the hourly rate and then computing the overtime premium amount owed.  PLAINTIFF worked for Defendant without being paid for all hours worked, regular and overtime.

125.    As a result of Defendant's violation of statutory mandates to pay employees for statutory wage requirements, as more fully set forth above, PLAINTIFF was damaged in an amount to be determined at trial, but which exceeds the minimum jurisdictional thresholds of this Court.

126.    PLAINTIFF seeks as damage all wages owed by Defendant.  PLAINTIFF further seeks an award of prejudgment interest on the unpaid wages herein.

WHEREFORE, PLAINTIFF prays for judgment as set forth below.

**NINTH CLAIM FOR RELIEF**

**(WRONGFUL TERMINATION IN VIOLATION OF PUBLIC POLICY)**

(Against Defendant UNITED and Does 1-25)

127.    PLAINTIFF incorporates by reference the allegations set forth above as though fully restated herein.

128.    At all times relevant herein, PLAINTIFF was employed by Defendant UNITED until his termination in or about March 2020.

129.    California has a fundamental, substantial, and well-established public policy, as expressed in FEHA and other laws and regulations, against discrimination and retaliation in the workplace.  California also has a fundamental, substantial, and well-established public policy,

**COMPLAINT FOR DAMAGES**
Adams v. United Airlines, et al., Norther District Court Case No. 21-3809

as expressed in the California Family Rights Act, California Labor Code § 233, and other California laws and regulations which provide that employees with medical conditions or other family care issues can take time off from their workplace duties to deal with these issues. Additionally, the City and County of San Francisco has a fundamental, substantial, and well-established public policy as expressed in its Paid Sick Leave ordinance. Defendant UNITED and Does 1-25 violated these important public policies by suspending and then terminating PLAINTIFF, in whole or in part and because of his request for leave under CFRA.  Furthermore, Defendant violated that policy by terminating PLAINTIFF, at least in part, because he exercised his rights in an attempt to work in a place free from discrimination and retaliation. Furthermore, Defendant violated that policy by terminating PLAINTIFF, at least in part, because he exercised his rights and requested medical leave under CFRA.

130.    Defendant terminated its employment relationship with PLAINTIFF.  PLAINTIFF is informed and believes, and thereon alleges, that PLAINTIFF was terminated in retaliation for his request for leave under CFRA.

131.    As a direct and proximate result of Defendant's actions against PLAINTIFF, as alleged above, PLAINTIFF has suffered and will continue to suffer severe mental and emotional distress, including but not limited to frustration, humiliation, embarrassment, stress, depression, nervousness, anxiety and loss of self-worth, and damage to his reputation.

132.    The unlawful conduct alleged above was engaged in by the officers, directors, supervisors and/or managing agents of Defendant, and each of them, who were acting at all times relevant to this Complaint within the scope and course of their employment.

133.    Defendant committed the acts herein alleged maliciously, fraudulently, and oppressively with the wrongful intention of injuring PLAINTIFF, and acted with an improper and evil motive amounting to malice and/or oppression, and in conscious disregard for PLAINTIFF's rights, and such acts were committed by, authorized by, and/or ratified by officers, directors, and/or managing agents of Defendant.  PLAINTIFF is therefore entitled to recover and herein prays for punitive damages in an amount sufficient to punish and deter Defendant

**COMPLAINT FOR DAMAGES**
Adams v. United Airlines, et al., Norther District Court Case No. 21-3809

and others for such conduct.

134.    As a result of the conduct of Defendant, PLAINTIFF was forced to retain an attorney in order to protect his rights.  Accordingly, PLAINTIFF seeks the reasonable attorneys' fees and costs incurred in this litigation in an amount according to proof at trial.

WHEREFORE, PLAINTIFF prays for judgment as set forth below.

**<u>PRAYER FOR RELIEF</u>**

WHEREFORE, PLAINTIFF makes the following demand:

1.    That process be issued and served as provided by law, requiring Defendants, and/or DOES 1 – 25, and each of them, to appear and answer or face judgment;

2.    That PLAINTIFF be reinstated to his prior position and prior seniority level.

3.    For general, special, actual, compensatory and/or nominal damages, as against Defendant and/or DOES 1 – 25, and each of them, in an amount to be determined at trial;

4.    For punitive damages in an amount to be determined at trial sufficient to punish, penalize and/or deter Defendant, and/or DOES 1 – 25, and each of them, from further engaging in the conduct described herein;

5.    For back pay, future pay, and other employment related benefits PLAINTIFF would have been afforded but for Defendants' and/or DOES 1 – 25, and each of their, unlawful conduct;

6.    For costs and expenses of this litigation;

7.    For reasonable attorneys' fees as provided by law;

8.    For pre and post-judgment interest on all damages and other relief awarded herein from all entities against whom such relief may be properly awarded; and

9.    For all such other relief as this Court deems just and appropriate.

DATED:        June 10, 2021        GEONETTA & FRUCHT, LLP

By: _____
Kenneth Frucht
Attorneys for PLAINTIFF CHAZ ADAMS

**COMPLAINT FOR DAMAGES**
Adams v. United Airlines, et al., Norther District Court Case No. 21-3809

## DEMAND FOR JURY TRIAL

Plaintiff hereby demands a trial by jury for each and every claim for which he has a right to jury trial.

DATED:  June 10, 2021                    GEONETTA & FRUCHT, LLP

By: _____
Kenneth Frucht
Attorneys for PLAINTIFF CHAZ ADAMS

**COMPLAINT FOR DAMAGES**
**Adams v. United Airlines, et al., Norther District Court Case No. 21-3809**